IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERA FRANCHISE SYSTEMS, LLC,

              Plaintiff and Counterdefendant,

      v.

HOPPENS REALTY, INC., f/d/b/a ERA
HOPPENS REALTY GROUP and
MICHAEL S. HOPPENS, an individual,

              Defendants and Counterplaintiffs,
and

WILSON MUTUAL INSURANCE COMPANY,

              Intervenor.

OPINION AND ORDER

12-cv-594-slc

---

On August 16, 2012, plaintiff ERA Franchise Systems, LLC commenced this civil action against defendant Hoppens Realty, Inc. and its owner, Michael S. Hoppens, alleging, among other things, that defendants had breached a franchise agreement and were violating trademark laws by continuing to use ERA's marks without authorization.  Dkt. 1.  Defendants filed an answer on September 7, 2012, which they amended on September 28, 2012.  Dkt. 9.  On November 30, 2012, defendants filed a counterclaim, asserting causes of action for breach of contract, conversion, unjust enrichment, misrepresentation and violation of the Wisconsin Fair Dealership Act.  This court has subject matter jurisdiction over the trademark claims pursuant to 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121 and supplemental jurisdiction over the state law claims and counterclaims pursuant to 28 U.S.C. § 1367.

Before the court is ERA's motion for judgment on the pleadings with respect to the counterclaim, filed pursuant to Fed. R. Civ. P. 12(c).  Dkt. 32.  Also pending is a recently-filed motion by ERA for leave to file a summary judgment motion with respect to its own claims for breach of contract.  Dkt. 46.

As will be discussed below, I am treating ERA's motion for judgment on the pleadings as a motion to dismiss under Rule 12(b)(6) because ERA filed it before the pleadings were closed, making a Rule 12(c) motion premature. ERA also mis-stepped by presenting arguments in its supporting documents that rely on certain pieces of evidence not referred to in the counterclaim and by contesting the factual accuracy of defendants' allegations. ERA obviously wants quick disposition of what appear to be weak claims, but the proper method for ERA to present its own version of the facts is in a motion for summary judgment, not a motion to dismiss on the pleadings. Accordingly, I have disregarded the evidence submitted by ERA that was not referred to in the counterclaim and I have disregarded its arguments based on that evidence. That evidence can be re-presented to the court in a summary judgment motion, which I will allow for reasons discussed below. Even without resort to evidence outside the pleadings, however, I agree with ERA that defendants' tort counterclaims must be dismissed.

## ALLEGATIONS OF DEFENDANTS' COUNTERCLAIM

### I. The Parties

Defendant/counterclaimant Hoppens Realty, Inc. is a corporation organized under the laws of Wisconsin with its principal place of business located in Onalaska. Defendant/counterclaimant Michael Hoppens is an adult resident of Onalaska. He is a real estate broker and the owner and operator of Hoppens Realty. Plaintiff/counterdefendant ERA Franchise Systems, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located in New Jersey. ERA sells real estate franchises.

**II. ERA's Representations to Hoppens**

In late 2007, Michael Hoppens met with an unnamed ERA representative (whom plaintiff does not/cannot identify) to discuss Hoppens Realty becoming an ERA Franchise. This representative told Hoppens that if Hoppens Realty would become an ERA franchise, it would receive a non-exclusive license to use the ERA trade name and trademarks. This representative also told Hoppens that ERA would provide the following training and support:

- Extensive sales training and skill development programs for Hoppens Realty agents and employees;

- Regular onsite visits from experienced ERA business consultants, field service managers, and other team members;

- Internet support and online training;

- Search engine exposure;

- Business planning;

- Networking events;

- One-on-one consultations;

- "Agent acquisition," whereby ERA representatives would recruit real estate agents to join Hoppens Realty and pay sales commissions to Hoppens Realty; and

- "Lead generation," whereby ERA representatives would provide Hoppens Realty with leads on new properties for sale.

In exchange, Hoppens Realty would agree to pay an initial $20,000 franchise fee plus eight percent of its gross revenue to ERA over the course of the franchise agreement.

The representations that the ERA representative made about training and support were untrue, known to be untrue or made in reckless disregard of their truth, and made with intent to deceive and induce Hoppens and Hoppens Realty to enter into the Franchise Agreement.

ERA had no intention of providing training and support to Hoppens Realty at the time it made the representation.

Based on and in reliance upon these representations, on or about March 1, 2008, Hoppens Realty entered into a 10-year Franchise Agreement with ERA, secured by a personal guaranty signed by Michael Hoppens.  Section 6 of the Agreement describes ERA's "services and obligations" to Hoppens Realty.   Specifically, ERA agreed to:

- pay for two Hoppens Realty employees to attend a new franchisee Implementation seminar, § 6.1.1;

- provide access to the P&P Manual, § 6.1.2;

- produce and maintain an inventory of advertising and marketing materials, sales promotion items and training aids for purchase or for license to use, § 6.2.1;

- maintain a staff to consult with Hoppens Realty on advertising, marketing and technical matters, by telephone, in writing or in person "as [ERA] deems appropriate and necessary," § 6.2.2; and

- maintain on its staff or appoint as its representative an individual with a valid real estate broker's license, §6.2.3.

This section of the franchise agreement further provided that ERA retained sole discretion to develop or discontinue optional programs to enhance the business and to condition Hoppens Realty's participation in such programs upon its being in compliance with the agreement. §6.2.4.

The franchise agreement contains an integration clause, set forth at § 22.15, which provides:

> You acknowledge that our operations have been fully explained to
> you; that you understand their uses, benefits and limitations; and
> that you have received no representations from us as to the
> particular type or amount of benefit to be gained under this

4

Agreement.   You have not relied on any written or oral representations except those specifically included in or made a part of this Agreement in writing.  Except as expressly provided herein, this Agreement and any written Addendum signed by our authorized officer and by you represents the entire integrated agreement between us and you and supersedes all prior negotiations, representations or agreements, either written or oral , between the parties and their respective representatives.  DO NOT SIGN THIS AGREEMENT IF YOU BELIEVE WE OR ANY OF OUR REPRESENTATIVES HAS PROMISED YOU SOMETHING THAT IS NOT PART OF THIS AGREEMENT, ANY ATTACHED ADDENDUM OR THE FRANCHISE OFFERING CIRCULAR.

Michael Hoppens spent approximately $5,000 to build a group training room in anticipation of ERA training sessions.  However, with the exception of an introductory meeting with a business consultant and two training sessions for Hoppens Realty's clerical staff concerning the use of ERA's accounting software, the onsite support promised by the ERA representative never materialized.  Shortly after Hoppens Realty became an ERA franchise, ERA eliminated its onsite training and support programs and switched to an online consulting service and telephone help hotline.  Michael Hoppens contacted ERA on many occasions and asked its representatives to provide the onsite and training and support that had been promised him, but he was ignored.  As a result of ERA's failure to honor its promises, Hoppens Realty stopped making payments under the franchise agreement.

## III.  "Settlement" Agreement

On or about January 26, 2010, ERA contacted Michael Hoppens and demanded that he pay approximately $108,664.55 in unpaid franchise payments.  Hoppens responded that he would not make payment until ERA met its obligations under the franchise agreement.  In May

5

2012, the parties reached a settlement agreement:  ERA agreed to settle its claims for unpaid franchise payments in exchange for $3,000, to be paid in three equal monthly installments, and would begin providing onsite training and support as promised.  Although Michael Hoppens made the first payment of $1,000 to ERA, ERA still did not provide the promised support. Hoppens did not make the last two settlement payments.  By letter dated July 30, 2012, ERA terminated the franchise agreement, without Hoppens Realty's consent.

## IV.  Relief Requested

Hoppens and Hoppens Realty seek judgment dismissing ERA's claims on the merits and with prejudice and for an award of damages in the amount of at least $38,808, which represents the total of franchise payments made, the cost of the unused training room and other unusable miscellaneous items, wages paid to employees related to the "failed franchise" and lost revenue as a result of three agents leaving because of the "failed franchise."  Counterclaim, dkt. 30, at 9.

## OPINION

## I.  Motion for Judgment on the Pleadings

### A.  Standard and Scope of Review

ERA asks the court to enter judgment in its favor on the counterclaim, pursuant to Fed. R. Civ. P. 12(c).  In ruling on a 12(c) motion, the court employs the same standards for a motion to dismiss for failure to state a claim brought under Federal Rule of Civil Procedure 12(b)(6). *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).  When reviewing a 12(b)(6) motion, the court takes all well-pleaded allegations in the counterclaim as true and

draws all inferences in favor of the non-movant. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). The counterclaim must include "enough facts to state a claim to relief that is plausible on its face," *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted), meaning that it must allow "the court to draw the reasonable inference that the [counter-defendant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Finally, under Rule 12(c), the court can consider documents attached to the pleadings, including letters and contracts, without converting a 12(c) motion to a motion for summary judgment. *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998).

ERA's Rule 12(c) motion in this case hits a speed bump because ERA filed it too quickly. Rule 12(c) permits a party to move for judgment "on the pleadings" after the pleadings are "closed" but early enough not to delay trial.  Fed. R. Civ. P. 12(c).  "Unless the court orders a reply to an answer or third-party answer, the pleadings close after the last of the following pleadings in the case has been filed: answer, reply to a counterclaim, answer to a crossclaim, and third-party answer." 2–12 Moore's Federal Practice—Civil § 12.38; *see also Flora v. Home Federal Sav. and Loan Ass'n*, 685 F.2d 209, 211 n. 4 (7th Cir. 1982) ("In a case such as this when, in addition to an answer, a counterclaim is pleaded, the pleadings are closed when the plaintiff serves his reply.").  In this case, ERA filed its Rule 12(c) motion in lieu of an answer to the counterclaim.  (A month later, after Hoppens and Hoppens Realty pointed out that the motion was premature, ERA filed its answer to the counterclaim.  Dkt. 37.)  Therefore, because the pleadings had not yet closed, a 12(c) motion was premature.

Although some courts have held that premature 12(c) motions should be denied, *see, e.g.,* *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005), *Progressive Casualty Ins. Co. v. Estate of Crone*, 894 F. Supp. 383 (D. Kansas 1995), others hold that a court may treat such premature 12(c) motions as a motion to dismiss under Rule 12(b)(6), on the ground that "any distinction between them is merely semantic because the same standard applies to motions made under either subsection." *Dale v. Executive Office of President*, 164 F. Supp. 2d 22, 24 (D.D.C. 2001) (quoting 2 Moore's Federal Practice 3d § 12.38, 12–101). *See also Collins v. Muskegon County Sheriff's Dept.*, 2007 WL 426586, *5 (W.D. Mich. Feb. 1, 2007); *Seber v. Unger*, 881 F.Supp. 323, 325 n. 2 (N.D. Ill. 1995) (describing the "common practice of treating the premature Rule 12(c) motion as a Rule 12(b)(6) motion" and citing cases). Indeed, unless this court construes ERA's motion in this fashion, its answer to the counterclaim is untimely, having been filed a month after its deadline passed.

ERA suggests another approach: this court should deem ERA's answer to have been filed *nunc pro tunc* on January 11, 2013, the date ERA filed its Rule 12(c) motion. Although this approach may have some initial curb appeal, it is legally untenable. As the Seventh Circuit has explained, the "nunc pro tunc" doctrine (which literally means "now for then") can be used to "change records so that they show what actually happened." *Justice v. Town of Cicero, Ill.*, 682 F.3d 662, 664 (7th Cir. 2012). It *cannot* be used, however, to show that a motion or other filing had been filed before it actually was filed. *Id.* *See also Central Laborers' Pension, Welfare & Annuity Funds v. Grifee*, 198 F.3d 642, 644 (7th Cir. 1999) ("As we have reminded the district courts time and again, the only proper office of a *nunc pro tunc* order is to correct a mistake in the records; it cannot be used to rewrite history."); *Kusay v. United States*, 62 F.3d 192, 193 (7th

Cir.1995) ("The power to correct erroneous records does not imply ability to revise the substance of what transpired or to back-date events."). Accordingly, I shall evaluate ERA's motion as if it was filed pursuant to Fed. R. Civ. P. 12(b)(6).

Before conducting this evaluation, it is important to identify the materials properly within the scope of the court's review. In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider "'any facts set forth in the [counterclaim] that undermine the [counterclaimant's] claim.'" *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992), quoting *R.J.R. Services Inc. v. Aetna Casualty & Surety Co.*, 895 F.2d 279, 281 (7th Cir. 1989). Included in this scope are exhibits attached to the counterclaim, Fed. R. Civ. P. 10(c), or documents referenced in the pleading that are central to the claim. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013), citing *Citadel Group Ltd. v. Washington Reg. Med. Center*, 692 F.3d 580, 591 (7th Cir. 2012).

Therefore, this court may consider the franchise agreement and July 30, 2012 termination letter, both of which Hoppens and Hoppens Realty reference in their counterclaim. Dkt. 30, ¶¶6, 22. Copies of these documents are attached to ERA's complaint, dkt. 1, exhs. A and D. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (explaining that defendant may supply documents mentioned in complaint without converting motion to dismiss into one for summary judgment). This court may *not* consider documents not referenced in the counterclaim, such as other letters attached to ERA's complaint and a copy of a check that ERA has attached to its motion. Indeed, even if I were considering ERA's motion under Rule 12(c), it would be improper to consider exhibits attached to motions. Contrary to ERA's

suggestion, a motion is not a "pleading." *See* Fed. R. Civ. P. 7(a) (identifying which documents are pleadings).

### B. Breach of Contract

In Count I of the counterclaim, Hoppens and Hoppens Realty allege that by failing to provide the training and support "as promised," ERA breached the Franchise Agreement. Counterclaim, dkt. 30,¶27.  ERA contends that the breach of contract claim must be dismissed because Michael Hoppens admitted in the counterclaim that he stopped making payments under the parties' franchise agreement.  Dkt. 30, ¶15 ("Due to ERA's complete failure to meet its obligations under the Franchise Agreement, Michael Hoppens stopped making franchise payments.").  Citing New Jersey law, ERA argues that "[u]nder basic contract principles, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages," but "[u]nder no circumstances may it stop performance and continue to take advantage of the contract's benefits."  Dkt. 32, at 4-5 (citing *S&R Corp. v. Jiffy lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992) (applying New Jersey law).

Although the parties dispute whether New Jersey or Wisconsin law applies to the non-WFDL claims pleaded in the counterclaim, it is unnecessary to resolve that dispute with respect to the instant claim.  Even assuming, *arguendo*, that New Jersey law applies, the cases cited by ERA do not sweep as broadly as it suggests.  In each of those cases, the question was whether an alleged pre-termination breach by the franchisor permitted the franchisee to continue using the franchisor's marks after the franchisor had properly terminated the franchise agreement, so as to defeat a claim of trademark infringement.  *Jiffy Lube*, 968 F.2d at 377; *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 806-07 (3d Cir. 1998).  The courts held that

10

although evidence of pretermination disputes was irrelevant to the question of trademark infringement because the franchisor's right to terminate a franchise (and prevent use of its marks) "exists independently of any claims the franchisee might have against the franchisor," *Jiffy Lube*, 968 F.2d at 375, the franchisee still could maintain an action for damages on its breach of contract claim. *Id*. at 377. *Accord Pappan Enterprises*, 143 F.3d at 806-07 (quoting *Jiffy Lube*). Here, Hoppens and Hoppens Realty are not raising ERA's alleged breach as a defense to a claim of trademark infringement, but are asserting it as their own cause of action. (In fact, it appears that Hoppens Realty stopped using ERA's trademarks after being notified that ERA was terminating the franchise agreement.) Furthermore, the cases cited by ERA indicate that even though an alleged breach by the franchisor cannot defeat a claim of trademark infringement, it may be the basis of a claim for damages. In short, the case cited by ERA do not support its argument for dismissing the counterclaim.

Hoppens and Hoppens Realty's breach of contract claim faces other problems, however. First, nowhere in their counterclaim do they identify any specific provision in the Franchise Agreement that ERA allegedly breached. *See Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008) (to prevail on claim for breach of contract, party must show a valid contract that other party breached and damages flowing from that breach) (applying Wisconsin law); *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007) (same). Instead, they rely exclusively on alleged oral misrepresentations made to Michael Hoppens by an unnamed ERA representative for the purpose of inducing him to enter into the contract.

This claim is unlikely to survive application of the franchise agreement's integration clause, which expressly disavows any reliance on any oral representations that were not

incorporated in writing into the agreement.  ERA did not raise the issue of the integration clause until its reply brief, so Hoppens has not had a fair opportunity to respond to it.  ERA can re-raise the integration clause issue in a motion for summary judgment.  When the contract contains an unambiguous merger or integration clause, "the court is barred from considering evidence of any prior or contemporaneous understandings or agreements between the parties, even as to the issue of integration."  *Town Bank v. City Real Estate Development, LLC*, 2010 WI 134, ¶39, 330 Wis.2d 340, 360, 793 N.W.2d 476, 486.  *Accord Filmlife Inc. v. Mal "Z" Ena, Inc.*, 251 N.J. Super. 570, 573, 598 A.2d 1234 (App. Div. 1991) (parol evidence rule operates to prohibit introduction of oral promises to alter or vary an integrated written instrument).  As explained in *Town Bank*, "this principle stems from basic contract law: if the contract is unambiguous, the court's attempt to determine the parties' intent ends with the language of the contract, without resort to extrinsic evidence."  2010 WI 134, ¶39, 330 Wis.2d 340, 360, 793 N.W.2d 476, 486.  The franchise agreement's pellucid integration clause confronts defendants' breach of contract claim like a *hors catégorie* climb on a "fixie."

Second, although defendants have not directly requested rescission of the franchise agreement (perhaps because it already has been terminated), they hint at this remedy by requesting in their counterclaim that this court dismiss ERA's claims with prejudice.  It is a basic principle of contract law that when a party discovers an alleged fraud or breach of contract by the other party, he may affirm the contract and sue for damages, or he may disaffirm and seek restitution, but he cannot obtain both.  *Eklund v. Koenig & Associates, Inc.*, 153 Wis.2d 374, 381, 451 N.W.2d 150, 153 (Ct. App. 1989) (citing Dobbs, Handbook on the Law of Remedies, sec. 1.5 at 15 (1973); *Meas v. Young*, 138 Wis. 2d 89 n. 3, 405 N.W.2d 697, 699-700 n. 3 ("We note that asking the court to rescind and affirming the contract and suing for damages are

generally considered inconsistent remedies."); *Deerhurst Estates v. Meadown Homes, Inc.*, 64 N.J. Super. 134, 146, 165 A.2d 543 (1960 ("Rescission and confirmation of the transaction are obviously inconsistent remedies.") (citation omitted).

Even where grounds might exist to set aside a contract, a party waives his right to rescind for fraud or mistake if he unreasonably delays asserting that right or affirms the agreement after learning of the fraud or mistake giving rise to the right of rescission. *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 319, 340 N.W. 2d 704 (1983); *Jones v. Gabrielan*, 52 N.J. Super. 563, 576, 146 A.2d 495 (App. Div. 1958) ("delay in [seeking] rescission of the contract is evidence of a waiver of the fraud and an election to treat the contract as valid.") (quoting *Allen v. Logan*, 116 N.J. Eq. 550, 552, 174 A. 561 (E. & A. 1934)).  Here, Hoppens Realty's conduct suggests that it elected to affirm the contract: it continued its use of the ERA name and marks for nearly two years after it discovered that ERA had misrepresented the services it would provide, it is claiming breach of contract in this lawsuit and it is not directly seeking rescission. *Accord Grube v. Daun*, 213 Wis. 2d 533, 552, 570 N.W. 2d 851 (1997) (parties found to have affirmed contract where, after discovering underground contamination and talking to a lawyer, they continued to live on and improve the land).  Accordingly, even if defendants could establish a breach, the likelihood that their own non-performance will be excused and ERA's claims dismissed is slim.

All of this being so, it would be improper to dismiss this claim at this time until all the relevant facts have been fully and fairly presented to the court.  ERA may re-raise these arguments in a motion for summary judgment if it believes that the relevant facts are undisputed; in the event material disputes exist, the claim can be resolved at trial.

### C.  Tort Claims:  Misrepresentation and Conversion

In Count II of the counterclaim, Hoppens and Hoppens Realty allege that ERA committed the tort of conversion when it accepted a settlement payment from Hoppens Realty, failed to perform under the settlement agreement and then "refused to return" the settlement payment to Hoppens Realty.  In Count IV, Hoppens alleges that ERA committed intentional or strict liability misrepresentation when its representative told Hoppens that his employees would receive training and support if Hoppens entered into a franchise agreement, knowing this was untrue or not caring if it was false, and that Hoppens relied on these representations to his detriment.  ERA contends that these claims are barred by the economic loss doctrine.

The economic loss doctrine, which is recognized by courts in both Wisconsin and New Jersey, precludes contracting parties from pursuing tort remedies for purely economic or commercial losses associated with the contract relationship. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶30, 283 Wis. 2d 555, 699 N.W. 2d 205; *Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009).  While New Jersey applies the doctrine to contracts for services, Wisconsin does not. *Insurance Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, ¶ 2, 276 Wis.2d 361, 688 N.W.2d 462.  Thus, because the parties appear to agree that the Franchise Agreement in this case is a contract for services, the economic loss doctrine comes into play only if New Jersey law applies.  Answering this question requires the court to delve into the parties' choice of law dispute.

A district court whose jurisdiction is based upon diversity of citizenship will apply the choice of law principles of the jurisdiction in which it sits to determine the substantive law that will apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941).  Therefore,

Wisconsin's choice of law principles apply. In general, Wisconsin courts will enforce parties' express agreement that the law of a particular jurisdiction shall control their contractual relations, provided there are no public policy reasons to disregard them. *Bush v. National Sch. Studios, Inc.*, 139 Wis.2d 635, 642, 407 N.W.2d 883 (1987). Allowing parties to stipulate to controlling law "promotes certainty and predictability in contractual relations . . .." *Id.* (citing Willis L.M. Reese, Choice of Law in Torts and Contracts and Directions for the Future, 16 Colum. J. Transnat'l L. 1, 22–24 (1977)). In this case, the parties' agreement contains two choice-of-law provisions:

> First, § 22.6 of the agreement provides:

>> This Agreement will be governed by the laws of the state of New Jersey, except that the New Jersey Franchise Practices Act shall not apply to agreements with Offices located outside New Jersey.

> Later, in § 24.6, the agreement states (with an obvious typo):

>> **24.6   Wisconsin:**   If you are a resident of Wisconsin, the following provisions shall apply and shall supersede any provision in this Agreement to the contrary the following provisions shall supersede and apply to the Agreement [*sic*]:

>>> **24.6.1**   The Wisconsin Fair Dealership Act, Wisconsin Statutes, Chapter 135 (the "Act"), shall apply to and govern the provisions of the Agreement.

>>> **24.6.2** The Act's requirement, including that in certain circumstances a franchisee or member receive 90 days' notice of termination, cancellation, non-renewal or substantial change in competitive circumstances, and 60 days to remedy claimed deficiencies, shall supersede the provisions of Section 16 of the Agreement to the extent they may be inconsistent with the Act's requirements.

Hoppens and Hoppens Realty contend that this section "supersedes" the New Jersey choice-of-law provision found at § 22.6, while ERA contends that § 24.6 simply adds the

additional requirements that the Wisconsin Fair Dealership law imposes on franchises located in Wisconsin.

ERA has the better argument.  Section 24.6 does not indicate that Wisconsin law "supersedes" § 22.6 or that it displaces New Jersey law entirely.  Rather, § 24.6 provides only that the Wisconsin Fair Dealership Law applies to the parties' agreement.  The WFDL provides dealers with "rights and remedies *in addition* to those existing by contract or common law," Wis. Stat. § 135.025 (emphasis added), namely, the right to good cause and notice before a grantor cancels or alters the dealership contract.  Hoppens and Hoppens Realty do not cite to any provision in the WFDL that provides that it *displaces* the parties' choice of law with respect to contract issues on topics other than termination or cancellation, or that mandates application of Wisconsin law to all aspects of the parties' relationship.  Defendants also fail to cite any authority suggesting that contracting parties are not free to specify that one state's law governs generally and that another state's law governs a specific aspect of their contract, as the parties agreed in this case.  Further, accepting defendants' position would nullify § 22.6 of the contract, a result that would run afoul of the principle that a court must give effect to each of the agreement's provisions. *Kurt van Engel Commission Co., Inc. v. Zingale*, 280 Wis.2d 777, 807 (Wis. App. 2005)(agreement should be given a reasonable meaning so that no part of the contract is surplusage); *Blaine v. Pressler & Pressler, LLP*, 2013 WL 2359729 (N.J. Super. A.D., May 31, 2013)(court will, if possible, give effect to all parts of the instrument and an interpretation that gives a reasonable meaning to all its provisions will be preferred to one that leaves a portion of the writing useless).  Giving the contract its plain and ordinary meaning, I am persuaded that

New Jersey law applies, except to the extent that it is inconsistent with Wisconsin's Fair Dealership Law.

Apart from their contention that Wisconsin law applies and therefore the economic loss doctrine does not come into play, Hoppens and Hoppens Realty have not offered any other arguments in opposition to ERA's contention that their tort claims are those for losses associated with the contractual relationship and therefore barred by the economic loss doctrine. Accordingly, Hoppens's tort claims shall be dismissed on the ground that they are barred by New Jersey's economic loss doctrine.

### D.  Unjust Enrichment

In Count III, defendants allege that ERA has been "unjustly enriched" by accepting at least $23,808 in franchise payments without providing the support or training in return as promised and by accepting $1,000 in settlement funds and then failing to honor the terms of the settlement.  [T]o claim unjust enrichment" under New Jersey law, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Snyder v. Farnam Companies, Inc.,* 792 F. Supp. 2d 712, 723–24 (D.N.J. 2011).  Wisconsin's law is similar.  *Buckett v. Jante*, 2009 WI App 55, ¶10, 316 Wis.2d 804, 767 N.W.2d 376 ("To establish a claim for unjust enrichment, the plaintiff must prove three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value.").

17

In urging the court to dismiss the unjust enrichment claim, ERA makes the same arguments raised as to why the breach of contract claim must be dismissed, namely, that Hoppens and Hoppens Realty are not entitled to sue for unjust enrichment because Hoppens Realty continued to use the ERA name after ERA allegedly breached the contract. I have already rejected this argument in Section B, above. ERA further argues that there can be no unjust enrichment here because its complaint "takes into account all credits due" and because Hoppens's allegations with respect to the settlement agreement are "wholly made up." In making this argument, ERA asks this court not only to disregard Hoppens's allegations but also to assume that ERA's own allegations about what happened are factually correct. As explained previously, this cannot be done when deciding a motion to dismiss. Furthermore, if ERA is correct that Hoppens is attempting to commit a fraud on the court, then the proper way to have raised that allegation would be a motion for sanctions under Rule 11. Fed. R. Civ. P. 11(c)(2). In the absence of a cognizable argument to dismiss the unjust enrichment claim, I will deny ERA's motion with respect to this claim.

Finally, I note that if this claim and the breach of contract claim both survive to trial, then Hoppens and Hoppens Realty will have to decide whether to pursue a theory of unjust enrichment or breach of contract, as the two are inconsistent. *Continental Cas. Co. v. Wisconsin Patients Compensation Fund*, 164 Wis. 2d 110, 118, 473 N.W.2d 584 (Ct. App. 1991) (doctrine of unjust enrichment is quasi contractual theory that applies only in absence of contract); *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) (under New Jersey law, no recovery under unjust enrichment when a valid, unrescinded contract governs rights of parties).

18

### E.  Violation of Wisconsin Fair Dealership Law

Hoppens and Hoppens Realty allege that ERA violated the Wisconsin Fair Dealership Law when it "terminated, cancelled, and/or substantially changed the competitive circumstances of the Franchise Agreement" without good cause and without providing adequate notice, as required by Wis. Stat. §§ 135.02(4), 135.03 and 135.04.  Counterclaim, dkt. 30, ¶¶50-51. Although it is not entirely clear from the counterclaim which actions by ERA constitute the basis for the WFDL claim, it appears that defendants are contesting the propriety of ERA's termination of the agreement.  *See* Counterclaim, dkt. 30, ¶22 ("ERA terminated the Franchise Agreement by letter dated July 30, 2102 without Mr. Hoppens' consent and without good cause."); Br. in Opp., dkt. 35, at 17 ("Whether the termination letters constituted adequate notice and whether ERA had good cause to terminate the franchise agreement, however, are questions of fact that must be answered by a jury.").

ERA argues that this claim must be dismissed because exhibits to its own complaint show that Hoppens Realty was provided with the 90 days pre-termination notice required by the statute and because Hoppens's admitted cessation of franchise payments undisputably constituted "good cause" for termination.  However, the April 6, 2012 letter to which ERA refers in support of its argument regarding notice is not properly before the court because the defendants did not refer to it in their counterclaim.  As for good cause, although it is true that Hoppens admits that he stopped making franchise payments, he contends that he had a right to "suspend performance" under the agreement in light of ERA's failure to provide the promised services and support.  Although this argument stands on shaky ground for reasons discussed

19

above, at this initial pleading stage I find Hoppens's allegations sufficient to state a facially plausible claim for violation of the WFDL.

### F. Futility of Amendment

When a complaint fails to state a claim for relief, the court ordinarily should allow plaintiff an opportunity, at least upon request, to amend the complaint to correct the problem if possible. *See* Fed. R. Civ. P. 15(a); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (reversing dismissal with prejudice); *Foster v. DeLuca*, 545 F.3d 582, 584–85 (7th Cir. 2008) (reversing dismissal with prejudice where district court did not explain reason for denying leave to amend). Leave to amend need not be granted, however, if it is clear that any amendment would be futile. *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994). In this case, there is no need to allow defendants to amend their complaint because the claims that I have dismissed fail on the legal ground that they are barred by New Jersey's economic loss doctrine. Thus, amendment would be futile.

### II. ERA's Motion for Leave to File Motion for Summary Judgment

ERA has filed a motion for leave to file a motion for summary judgment on Counts V and VI of its complaint. Hoppens and Hoppens Realty oppose the motion on the ground that it is untimely.

The deadline for filing dispositive motions expired on April 1, 2013, while the instant motion for judgment on the pleadings was pending. At the parties' request, this court held a telephonic status conference on April 25, 2013, at which it re-calendared certain deadlines, but

20

did not set a new date for dispositive motions; ERA recalls that the court indicated that ERA could request leave to file a summary judgment motion, if necessary, by mid-June.  At this juncture, it would be unfair to deny ERA an opportunity to file a motion for summary judgment given the court's delay in ruling on ERA's motion to dismiss until the end of July.  Although this will require that the calendar be re-set yet again, I find it necessary to do so in the interests of justice.

Because the instant ruling may affect how ERA proceeds on summary judgment, the court will defer acceptance of its proposed motion for filing at this time.  Instead, the court will hold a telephonic scheduling conference with the parties on August 9, 2013 at 9:00 a.m.  At that time, ERA may advise the court whether it wishes to stand on the summary judgment it has presently proposed or whether it wishes to file a new motion.  (The right to file dispositive motions flows in both directions: defendants also may file a motion for summary judgment if they believe they have grounds to do so.)  For now, the pending calendar in this case is stricken, to be re-set at that conference.

ORDER

IT IS ORDERED that:

1.  The motion of plaintiff and counterdefendant ERA Franchise Systems, LLC for judgment on the counterclaim, dkt. 32, is GRANTED IN PART and DENIED IN PART.  It is GRANTED with respect to Counts II and IV and DENIED as to all other counts;

2.  ERA's motion for leave to file a motion for summary judgment is granted;

3.  All pending dates remaining in this case are STRICKEN, to be re-set in consultation with the parties at a telephonic conference on August 9, 2013 at 9:00 a.m., with plaintiff arranging the conference call to chambers.

Entered this 31st day of July, 2013.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge